RIDGWAY AND WIFE v. EXECUTORS OF ENGLISH.

1. Assumpsit by husband and wife against the executors of the wife's father, to recover compensation for services performed by the daughter, the promises being laid to have been made by the father to her while yet sole. The defendants having pleaded the statute of limitations, *held*, that a promise by the father in his lifetime, but after the marriage of the daughter, did not support the issue. The subsequent promise to take the case out of the statute must be conformable to, and maintain the promise, as laid in the declaration.

2. When a daughter, after arriving of age, continues to reside in her father's family, supported by him, and performing useful services in return, the law will not, except under special circumstances, imply a promise on the part of the father to pay for such services. If she demand pay, it is incumbent on her to show affirmatively that compensation was to be made, and that it was so expected by both parties, or that the services were performed under such circumstances as that the expectation was reasonable and proper.

Rule to show cause.

This was an action of assumpsit against the executors of Thomas English, deceased, brought to recover compensation for services alleged to have been rendered by the wife to the decedent, who was her father, before her marriage. The declaration contained two counts only. The first was in the common form of *indebitatus assumpsit* for work and labor, care and diligence, &c.; the second was for a *quantum meruit;* and both averred the promises to have been made by the testator to the daughter while sole and unmarried. The defendants pleaded *non assumpsit* and the statute of limitations. The replication to the second plea was, that the testator did, within six years next before, &c., undertake and promise, in manner, &c.

Upon the trial at the Mercer circuit, in June, 1849, before the Chief Justice, it appeared in evidence that the testator's first wife died August 13, 1836, and that the daughter, a woman who had attained the age of majority, and then resided with her father, took charge of his family, and acted as housekeeper until his second marriage, in February, 1841. The testator was a farmer, who worked the farm upon which he resided. His family consisted of the daughter, two grand daughters, who also resided with him, and assisted in the domestic services, a girl, one, and sometimes two bound boys, and a

hired laborer. The daughter seems to have discharged the duties which she assumed to the satisfaction of the father. No agreement in regard to compensation appears to have been made. She was married to Thomas Ridgway October 22, 1840, and left her father's house shortly after the marriage. The father died June 29, 1849, and this action was brought by writ returnable to the term of October, 1848, of the Supreme Court.

The plaintiffs relied upon declarations made by the testator subsequent to the marriage of the daughter, to support the action, and to take the case out of the statute of limitations. It seems unnecessary further to state the evidence, as the character of these declarations will sufficiently appear in the opinion delivered.

The court refused at the trial to nonsuit the plaintiffs, but reserved the questions raised for the opinion of the court at bar, when the rule was argued before the CHIEF JUSTICE and Justices CARPENTER and RANDOLPH.

*Ten Eyck* and *W. Halsted*, for rule.

1. There was no evidence of such promise by the deceased as that laid in the declaration, either proved or implied, within six years before suit brought. The suit was brought more than seven years after the last day's services claimed for. The claim comes down to March 29, 1841, and he died June 29, 1847, more than six years after that period.

The promises are laid to be to Mary, while sole and unmarried. There was no evidence of such promises, and there could have been none so made which could avail in this suit. She was married October 22, 1840, more than six years before suit brought. If any, which is denied, it must have been after the marriage. Such promise, if proved, would not correspond with the declaration. 2 *Stark. Ev.* 670 (*Phil.* 1842); 2 *Cow. Phil. Ev.* 511, *notes;* 5 *Conn.* 273; *Angell Lim. c.* 24, § 2, 288.

2. There was no proof of any promise by the deceased, or of facts from which the law would imply a promise, at any rate not within six years.

Certainly there was no evidence of any express promise.

The services were rendered by a daughter to a father, who, on the other hand, maintained her according to her station in life, and the law in such case will not imply a promise. 17 *Vermont* 556; 3 *B. Munroe* 647; 4 *Dal.* 111; *U. S. Dig.* 187; 20 *John.* 28.

There was no such acknowledgment as, under any pleadings, would take the case out of the statute. 2 *Greenl. Ev.* § 440; *Saxton* 404; 6 *Gill & Johnson* 309.

*Beasley* and *Vroom*, for plaintiffs, contra. We regard the questions of fact as settled by the jury. There was enough evidence to go to the jury, and we submit that there is but a question as to the alleged variance under the pleadings.

Is the promise proved different from that laid? The objection is technical, and it raises the inquiry, whether the recovery is upon the original or the subsequent promise. We submit that the subsequent promise is not the basis of the action, but it is only evidence that the bar of the statute is waived. The new doctrine does not obtain in England, and so is the weight of authority in this country. 1 *Smith's L. Cas.* 318, *et seq.* (429, 434, &c., *Phil. ed.* 1844,); 2 *Bingh. N. Cas.* 713; 2 *Burr.* 1099; 1 *Russ. & My.* 199; 5 *Wend.* 257; 7 *Cow.* 653; *Spenc.* 280; 7 *Halst.* 256.

The new promise waives the statutory bar, but the cause of action only rests on the original consideration. Here the declaration properly sets forth the original consideration, and the subsequent promises are only relied on to show such waiver. The new promise averred in the replication is merely formal. In England, however, the rule of pleading requires the promises in the pleadings to correspond, as to the person, with the proof: thus, the statute being pleaded, a promise to an executor will not support an averment of a promise to the testator. 2 *Ld. Ray.* 1101; 6 *Taunt.* 210; 1 *B. & C.* 248; 16 *East* 420. But this ground must rest on the new promise; and how far that may lead, will be seen by a reference to the cases, when such view has been taken. See 1 *Smith's L. Cas.*, note by *Mr. Hare*, 440, &c. (*Phil. ed.*)

The rule in Massachusetts, upon principle, seems to be the

correct rule, where it is held, that in such case no special count is necessary. 8 *Mass.* 133; 16 *Ib.* 429; 9 *Pick.* 488; 14 *Ib.* 387.

GREEN, C. J. Two questions are involved in the consideration of the motion to set aside the verdict in this cause.

I. Was the evidence offered at the trial on the part of the plaintiff relevant to the issue? If it was, then—

II. Was it sufficient to support the issue on the part of the plaintiff.

I. The action was brought by Ridgway and wife to recover from the executors of her father's estate compensation for services rendered by the wife to her father, while she was sole and unmarried. The declaration avers that the testator, being indebted to the plaintiff's wife for work and labor, undertook and promised the wife, while she was sole and unmarried, to pay, &c. The plea is the general issue and the statute of limitations. Upon this plea issue is joined. Upon the trial, it appeared that the wife had been married more than six years before the commencement of the suit, and the promises relied upon to take the case out of the statute were made not while the wife was sole, but during her coverture, and, consequently, enured not to the wife alone, but to the husband and wife.

It seems well settled that evidence of an acknowledgment *by* an executor or administrator within six years, will not support a count laying the promise to have been made *by* the testator or intestate, nor will evidence of an acknowledgment made to an executor or administrator support a count laying the promise to have been made to the testator or intestate. Hence, when it is intended to rely upon a promise made by or to an executor to take a case out of the statute, it is necessary to insert in the declaration a count charging the promise in that form. *Executors of Marlborough* v. *Widmore*, 2 *Stran.* 890; *Green* v. *Crane*, 2 *Ld. Ray.* 1101; *Salk.* 28; *Hickman* v. *Walker*, *Willes* 29; *Sarrell* v. *Wine*, 3 *East* 409; *Ward and wife* v. *Hunter*, 6 *Taunt.* 210; *Short* v. *McCarthy*, 3 *Barn. & Ald.* 626; *Jones* v. *Moore*, 5 *Binney* 573; 1 *Chit. Pl.* (7th ed.) 234, 392; 2 *Ib.* 102, 140, 142.

In such cases the declaration is not framed upon the new promise, as a distinct substantive cause of action; but the original contract or cause of action is set forth, and the new promise counted on in such form as to correspond with the evidence intended to be produced. The necessity for the practice rests upon the broad principle, that the allegation and proof must correspond.

In *Tanner* v. *Smart*, 6 *Barn. & Cress.* 603, Lord Tenterden, Chief Justice, said, " The only principle upon which an acknowledgment can be held to be an answer to the statute is this: that an acknowledgment is evidence of a new promise, and, as such, constitutes a new cause of action, and supports and establishes the promises which the declaration states. Upon this principle, whenever the acknowledgment supports any of the promises in the declaration, the plaintiff succeeds; when it does not support them (though it may clearly show that the debt has never been paid, but is still a subsisting debt,) the plaintiff fails. After citing a number of earlier cases, he added: " all these cases proceed upon the principle, that, under the ordinary issue on the statute of limitations, an acknwledgment is only evidence of a promise to pay; and unless it is conformable to, and maintains the promises in the declaration, though it may show to demonstration that the debt has never been paid, and is still subsisting, it has no effect."

In accordance with this doctrine, when an action was brought against Foster and John Norris and Mary his wife, upon a promissory note made by Foster and Mary Norris, while the latter was sole, laying the promises to have been made by Foster and Mary, while she was sole and unmarried, upon a plea of the statute of limitations, the evidence being only of an acknowledgment by Foster, after the marriage of Mary, the plaintiff was nonsuited, on the ground that the evidence did not sustain the issue. *Pittam* v. *Foster et al.*, 1 *Barn. & C.* 248.

So in *Bonnel* v. *Taintor's executors*, 5 *Conn.* 273, it was held that a promise to the husband and wife, jointly, would

not sustain an allegation of a promise to the wife before marriage.

The present case is directly within the principle of the two cases last cited. It is true that in the case of *Pittam* v. *Foster* there was an additional difficulty, one of the defendants, at the time of the acknowledgment proved, being a *feme covert*, and incapable, therefore, of making a contract.

In *Hayden* v. *Williams*, 7 *Bing.* 163, Tindal, C. J., alluding to the decision of the court in *Tanner* v. *Smart*, 6 *Barn. & C.* 603, said, the principle laid down by the court in that case, and which is deduced from the former decisions, was, that the promise which is given in evidence, under the general replication to the statute of limitations, must be one which is consistent with the promises laid in the declaration, and consequently that evidence of a *conditional*, will not support an *absolute* promise in the declaration. So here, also, we think the promise to pay by the defendant, being guarded with a condition, *whether it is taken as a new promise, or a revival of the former*, is a departure from the absolute promise laid in the declaration.

The result of these cases does not, as was supposed by counsel upon the argument, rest upon the theory adopted by the English courts, that the new promise is the foundation of the action, and that the declaration must consequently be framed in accordance with the terms of that promise. On the contrary, in *Hayden* v. *Williams*, the court expressly waived the decision of that point, and held that the promise *proved*, whether regarded as a *new* promise, or as a revival of the former, was a departure from the promise laid in the declaration.

So it is held by the English courts, that where there is a promise or an acknowledgment made by the defendant to the original creditor within six years, it is not necessary to count upon the new promise, but it is sufficient to declare upon the original contract. 1 *Chit. Pl.* 392. The reason is, that in such case the evidence of an acknowledgment by the defendant corresponds with the promise laid in the declaration. There is no conflict between the allegation and the proof. Thus, in a declaration upon a promissory note, falling due more than six

years before the commencement of the suit, upon the general re-plication to a plea of the statute of limitations, the question is not whether the note was actually made within six years before the commencement of the suit. It is apparent, upon the face of the record, that it was not. But the plaintiff, by his declaration, avers that the defendant, being indebted upon the note, pro-mised the plaintiff to pay it; and if, upon the trial, he shows a promise by the defendant, or an acknowledgment from which the law will imply a promise within six years, he supports by proof the promise laid in the declaration.

The test principle, which pervades the cases, is not whether the declaration is framed upon the old promise or the new, not whether the new promise operates as a renewal of the old con-tract or as a revival of the remedy, or as a waiver of the bar of the statute, or as a substantive contract, but whether the proof made corresponds with the promise laid in the declaration. If it does not, the evidence is inadmissible.

In whatever mode the new promise may be held to operate, in order to take the case out of the statute of limitations, (and upon this point there has long been much conflict of opinion) it seems safe to affirm, both upon principle and upon authority, that, in order to be effectual, the new promise (or the acknowledgment from which the promise is to be presumed) must be made by a party competent to make it, to or in favor of a party in exist-ence to receive it, and must correspond with the promise laid in the declaration. *Ward and wife* v. *Hunter*, 6 *Taunt.* 210; *Pit-tam* v. *Foster*, 1 *Barn. & C.* 248; *Kline* v. *Guthart*, 2 *Penn. R.* 490; *Powers* v. *Southgate*, 15 *Verm.* 471; *Tanner* v. *Smart*, 6 *Barn. & C.* 603.

But, admitting the competency and relevancy of the evi-dence, does it sustain the issue? It appeared in evidence that the wife of the plaintiff continued to reside with her father, as a member of his family, after she was twenty-one years of age, until her marriage, a period of about twelve years. Her mother died about four years before the marriage of the plain-tiff. The plaintiffs sought to recover for the services of the wife for the period intervening between the death of the mother and her own marriage. The fact, that she was a member of

her father's family, and rendering service during this period, was proved. But it is admitted that from this fact alone, as between parent and child, the law will not presume a contract of hiring or a promise to pay. In ordinary cases, the law raises the presumption of a promise to pay, from the mere fact of service. Such is presumed to be the understanding of the parties. But the law will never imply a contract to pay for services contrary to the intention and understanding of the parties. After the age of twenty-one, the child may continue in her father's house—1, either as a hired servant, where she would be entitled to wages; or 2, as a boarder, where she would be bound to pay for her maintenance; or 3, as a child unemancipated in fact, in which case she is neither entitled to wages nor liable for her board.

In the latter character she is presumed to remain, unless there be evidence to the contrary. The law will not presume any change in the existing relation of the parties from the mere fact that the child is twenty-one. This is the well settled law, at least in this state, and was not questioned at the trial, or upon the argument.

The plaintiffs, therefore, could not rely upon the mere fact of service rendered to entitle them to a verdict. They were bound to go farther, and to show either an express contract, or circumstances from which a contract might be presumed.

There was no evidence whatever of an express contract, or of any claim for services by the daughter, during her father's lifetime, or within six years after she had left his service. There was no evidence that one word, even, passed between the father and daughter, either before or during the continuance of the service, or afterwards. The plaintiffs relied exclusively upon the declarations made, not to the daughter, or in her presence, but to others, after the determination of the service. These declarations were relied on, both to prove the contract of hiring, and to take the case out of the statute of limitations. One of the witnesses testified that she had heard the testator declare, when speaking of his daughter, " that she had not been paid, and she should be well paid; he meant to portion her out, but had not yet done it; when she got her

house built, he was going to furnish out her parlor." Another witness testified that the testator said, " it was his intention to have given her an outfit ; but things had turned out differently, and now he intended she should be well paid."

By other witnesses it was proved that the testator said " his daughter had been a good housekeeper : she had never been paid, but he intended she should be." Are these acknowledgments, standing alone, sufficient to raise the presumption of a contract between the father and daughter ? There is no admission of a *debt due,* or of an obligation to pay it. There is no promise to pay. There is a simple declaration of an intention, on his part, to remunerate his daughter for services, which any father might naturally make respecting a dutiful child, without the existence of any contract or obligation. Indeed, the expressions used by the father, on more than one occasion, that he intended to have given his daughter an outfit, (that he was going to furnish her parlor), but that things had turned out differently, and now he intended she should be well paid, would seem, of necessity, to exclude all idea of contract or obligation. If there had been previous evidence of a contract and of an obligation to pay, this evidence might raise a fair presumption that the debt had not been discharged. But if it proves any contract, and shows the existence of any obligation, what contract and what obligation does it show ? The plaintiff claimed for the services of his wife from the death of her mother ; but if he had claimed from the time that the wife came of age, the evidence would have been precisely as applicable to the one case as to the other. No previous contract having been shown, no definite period to which the evidence was to apply having been made out, it is obvious that the evidence is in the last degree vague and indefinite. If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, to which the party is liable, and willing to pay. *Bell* v. *Morrison,* 1 *Peters* 362, 411.

In *Bell* v. *Morrison,* one of the defendants admitted that

the partnership was owing the plaintiff, but, as he had not the books, he could not settle, the court said, if this evidence stood alone it would be too loose to entitle the plaintiff to recover any thing. The language might be equally true, whether the debt were one dollar or ten thousand dollars. It is indispensable for the plaintiff to go farther, and to establish, by independent evidence, the extent of the balance due him before there can arise any promise to pay it as a subsisting debt. 1 *Peters* 366.

In the present case there was no independent evidence to show the balance due : no book had been kept, no account was rendered, no contract had been proved. The whole case rested upon an acknowledgment of the most vague and indefinite character. There was in reality no evidence from which a jury could lawfully have inferred a promise to take the case out of the statute, and the court ought so to have declared.

Chief Justice Ewing, in delivering the opinion of the court in *Belles* v. *Belles*, said, " The court also erred in omitting to charge that there was no evidence from which the jury ought to infer a new promise, to take the case out of the statute. The facts, or amount of evidence, from which such an inference may be drawn, or, in other words, the nature and extent of the admission or acknowledgment which will raise a new promise, is a question of law. An answer to this question, the court, if required, should give to the jury." 7 *Halst.* 341.

Being a question of law, the court are equally bound to decide it upon a motion to nonsuit.

I am of opinion that the judge at the circuit erred in refusing to nonsuit—1st, because the evidence offered was irrelevant, and not within the issue; and, 2d, because, if relevant, it was not sufficient to raise the presumption of a new promise, and to take the case out of the statute of limitations.

The verdict must be set aside, and judgment of nonsuit entered.

CARPENTER, J. This action is brought by husband and wife, against the executors of the wife's father, to recover compensation for services performed by the daughter. The declaration

is for work and labor alleged to have been done by the daughter for the father, in his lifetime, and the promises are laid by him to her while she was yet sole and unmarried. The pleas are *non assumpsit* and the statute of limitations. The plaintiffs reply to the second plea, that the testator did promise within six years, &c. There can be no pretence of a promise made to her while sole, within that period, for she was married more than six years before the commencement of the suit. It is urged, therefore, that under these pleadings the verdict cannot stand independent of the objection, which goes to the cause of action itself.

It is now settled that in this action, in order to take the case out of the statute of limitations, there must be a promise to pay, or so clear an admission of a subsisting debt, as that a promise must necessarily be implied. The idea seems formerly to have been, that the bar of the statute was founded on the mere presumption of payment, and that whatever would repel such presumption, would be an answer to the statute. An acknowledgment, though accompanied by a refusal to pay, has been held sufficient. But it is now held, and upon sound principle, that when an acknowledgment is relied on, if there is any thing said at the time of making the admission to repel the inference of a promise, the case will not be taken out of the statute. With whatever clearness the debt be acknowledged, if the debtor at the same time expresses an intention not to pay, there can be no recovery. And so even on a contingent or conditional promise, unless the condition or contingency be shown to have occurred or been performed. *Belles* v. *Belles*, 7 *Halst.* 339; *A'Court* v. *Cross*, 3 *Bing.* 329; *Waters* v. *Earl of Thanet*, 2 *Q. B.* 757; *Tanner* v. *Smart*, 6 *B. & C.* 603.

So far the law is now clearly settled, as well in England as in this country; but whether such promise is available as a new cause of action, or whether the recovery, which depends upon the new promise, is still upon the original indebtedness, is a subject which has given rise to many conflicting decisions. It is scarcely possible to reconcile the modern doctrine of a new cause of action springing from the new promise with the

admitted principle, that the statute was only intended to bar the remedy, and not to discharge or extinguish the original debt. *Higgins* v. *Scott*, 2 *B. & Ad.* 413. It seems equally difficult to reconcile it with the established forms of pleading, said, by a great judge, to be of greater authority than ever adjudged cases. *Lord Kenyon, in Farr* v. *Newman*, 4 *T. R.* 648

The declaration is upon the original consideration. To this, when the lapse of time is relied on in bar of the action, the defendant pleads the statute. If the plaintiff can rely only on the new promise as a new cause of action, if he must so treat it, it would seem, as has been said, that he ought, according to the rules of pleading, to new assign such new cause and fresh promise, and thereby distinguish it from the old ground of action, to which the defendant has pointed his plea. *Smith on Contracts* 315, *note*, (*Phil.* 1847). The only reason why a new assignment is not required in such case seems to be, because the acknowledgment or promise is not a new cause of action, but a recognition of a subsisting debt.

If the issue turned upon the new promise as a new cause of action, it would require a new consideration to support it, if the theory is pursued to the legitimate results. Thus, it has been held, by sound inference from the doctrine, that an executor or administrator, who is answerable in his official capacity for no cause of action not created by the decedent himself, cannot be made liable, even upon an express promise, under the ordinary counts against him as such executor or administrator. It has been held that the estate cannot be charged upon his promises, and that he can only be made liable in a special action upon them as a new cause of action, when such promises have been made upon a sufficient consideration. *Fritz* v. *Thomas*, 1 *Whart.* 66; *Reynolds* v. *Hamilton*, 7 *Watts* 420, cited in *Mr. Hare's note;* 1 *Smith's L. Cas.* 437. Yet many cases have established the principle, that the estate of a decedent may be charged, or, rather that the bar of the statute may be waived, by proof of an *express* promise by the executor, though not by an acknowledgment merely. *Angell on Lim.* 290, *and cases.*

But it is of less importance to adopt a theory than it is to

submit to the authority of adjudged cases, and leave undisturbed a settled course of decision. Whatever doubts have been raised as to some questions under the plea of the statute of limitations, yet it has always been held that the subsequent promise to take the case out of the statute must be conformable to, and maintain the promise, as laid in the declaration. Assuming that the original debt remains, and the remedy only is gone, the plaintiff, as between the original parties to the contract, may declare on the original promise, and rely on the subsequent acknowledgment. But when the promise relied on is by other persons, as by the representatives of the deceased debtor, it is necessary to declare specially and set out such promise. It is now too well settled to be lightly disturbed by any theory, that the new promise must accord with the averments in the declaration, and appear to have been made between the parties therein set forth. Thus, in assumpsit by an executor or administrator upon a promise to the decedent, to which the statute is pleaded, it has often been held that the action cannot be maintained by proof of a promise to the representative, six years having elapsed since the death of the testator or intestate. The promise to the executor is not within the issue. So if the action be *against* an executor or administrator, on a debt contracted by the decedent more than six years before the commencement of the suit, it cannot be taken out of the statute by proof of a promise by the representative, unless so laid in the declaration. If the plaintiff means to rely on such subsequent promise, the declaration should contain a count or counts accordingly. *Green* v. *Crane*, 2 *Ld. Ray.* 1101 ; *S. C. nom. Dean* v. *Crane*, 1 *Salk.* 28 ; *Ward* v. *Hunter*, 6 *Taunt.* 210 ; *Savell* v. *Wine*, 3 *East.* 409 ; *Executors of Marlborough* v. *Widmore*, 2 *Str.* 890 ; *Saltar* v. *Saltar*, 1 *Halst.* 405 ; *Ewing, C. J.*, 6 *Halst.* 164 ; *Kinder* v. *Pavis*, 2 *H. Bl.* 562 ; *Browning* v. *Pavis*, 5 *M. & W.* 120 ; *Hickman* v. *Walker*, *Willes* 27 ; *Steph. Pl.* 410 ; *Gould* 453 ; 2 *Saund.* 63, note ; 2 *Stark. Ev.* 670, (*Phil.* 1842).

The same principles were adopted in *Pittam* v. *Foster*, 1 *B. & C.* 248, a case closely analogous to the present, where the question was also held to depend upon the form of the

promise laid in the declaration. The action was upon a promise made by Foster and one Mary Norris, before the marriage of the latter. Mary married more than six years before the action brought. The statute being pleaded, the evidence relied on was a promise by Foster, after the marriage of the woman, which was held not to sustain the issue. But, besides, in that case the wife had been married above six years, so that there could not have been a promise by her *dum sola* within six years, which fact alone, said Holroyd, J., would have decided the question. In a late case the rule was recognised by Erle, J., who said, that the new promise, to constitute an answer to the plea of the statute, must be consistent with the original one, as in cases where questions have arisen after the marriage of a female contractor. *Kemps* v. *Gibbon,* 9 *Q. B.* 611. Under these principles, as to the conformity of the evidence with the promises laid, which prevail not only in England, but, perhaps, in every state in the Union, except Massachusetts and New Hampshire, it is obvious that the verdict cannot possibly be sustained. The evidence was incompetent, and the plaintiffs should have been nonsuited : having been received, the verdict must be set aside.

What has already been said is sufficient to dispose of this case so far as the present motion is concerned. It will be proper, however, to notice the remaining objection. It is the ordinary presumption between strangers, that upon the performance of useful services by one in the family of another, it is upon the implied promise to pay as much as such services are reasonably worth, when there has been no express agreement on the subject. But the rule stands on a very different footing where the relation subsists of parent and child, and the latter prolongs a residence in the family of the parent, performing a share in the ordinary labors of the family, and receiving protection and supplies suitable to the station in life of the parties in return. Especially may the remark be applied to the case of a daughter, who, after majority, continues to reside in the family of her father the same as before, where the services rendered and the support and comforts received may well be accounted for upon considerations of mutual kindness and mu-

tual comfort and convenience, without presuming that there was any understanding or expectation of pecuniary compensation to be made by the one party to the other. The law in such case, without special circumstances to warrant the presumption, will. not imply a promise by the parent to pay for the services of the child, any more than, from the mere residence of the child with her parent, it would imply a promise on the part of the child to pay for her board and maintenance. If the child bring suit for pay, it is incumbent upon her to show affirmatively that compensation was to be made, and that it was so expected by both parties, or that the services were performed by her under such circumstances as that the expectation was reasonable and proper. *Andrus and wife* v. *Foster*, 17 *Verm.* 556; *Guild* v. *Guild*, 15 *Pick.* 129.

What circumstances will authorize a jury to infer a promise, must necessarily vary with the circumstances of each particular case. The state and condition of the family; the character of the services rendered prior and subsequent to the time from whence the claim for compensation commences; the conduct of the other daughters, &c., and whether they shared in the labors of the family and with or without compensation; and the declarations of the parent on the subject: these are some of the circumstances which, it has been said, may be made the proper subject and source of inquiry for a jury, under proper direction from the court, and will doubtless ordinarily lead to a just result.

In this case this daughter, and two grand daughters who were previously in the family of the testator, continued to reside with him after the death of his wife, were suitably maintained by him, and rendered various domestic services in return. The daughter of mature age, as was natural and proper, took charge of the family as housekeeper, and so acted until her father's second marriage, which took place shortly after her own. No proof of any previous agreement on his part to pay her wages is shown, nor on hers of expectation that such compensation would be made. The services rendered, though doubtless useful and meritorious, are of a character not unusual between persons so related and of such condition in life. It is the mere case of an unmarried daughter remaining in her

father's house after arriving at the age of twenty-one years, performing such services as it is customary for a daughter to perform, and supported by the father in return. Upon the case so far, I think, a verdict for the plaintiffs would not be warranted by the evidence. If there is any thing to support the verdict, it must be in the subsequent declarations of the father.

It is proved that subsequent to the marriage of the daughter, and after she had left his house, he expressed himself satisfied with her services; said that she had been a good housekeeper, and had never been paid for those services, but that he intended she should be. He said, that when she married he had intended to portion her out, to furnish her house, and to pay her well. Again, that she had rendered him important services; that it was his intention to have given her an outfit, but things had turned out differently, and now he intended she should be well paid. If these declarations had been proved to have been also made prior to or during the rendering of those services, and to have been the inducement by which he had retained her in his family in the capacity which she assumed, they would go far in making a case entitling the daughter to such compensation as her services might be reasonably worth. Such evidence would repel the idea that they were given gratuitously. *Jewry* v. *Burk*, 5 *Taunt.* 302; *Jacobson* v. *Le Grange*, 3 *John.* 199. But there is great difficulty in construing these declarations as any thing more than expressions of the kind intentions of the father towards his daughter. He had failed to give her such outfit as he had at one time intended, and then he proposed to provide for her in some other way.

It is clear that the verdict must be set aside.

Rule absolute.

CITED *in Brown* v. *Ramsay*, 5 *Dutch.* 121; *Betts* v. *Francis*, 1 *Vr.* 155; *Sutton* v. *Huffman*, 3 *Vr.* 64; *Updyke* v. *Ten Broeck*, 3 *Vr.* 115; *Horner* v. *Webster*, 4 *Vr.* 411; *Coley* v. *Coley*, 1 *McCar.* 353; *Prickett* v. *Prickett's Ad.*, 5 *C. E. Gr.* 480; *Gardner's Ad.* v. *Schooley*, 10 *C. E. Gr.* 154.