### SPEAKER v. KEATING et al.
### Civil No. 888.

District Court, E. D. New York.

Jan. 16, 1941.

Louis Klatzko, of New York City, for plaintiff.

Bergner & Bergner, of New York City
Louis Bergner and Benjamin Poller, both of New York City, of counsel), for defendants.

CAMPBELL, District Judge.

This action is brought by the plaintiff for a declaratory judgment decreeing that the title to certain bonds and mortgages more fully described in the complaint herein is in her, by virtue of "the acts of the late Katherine Schaefer in the delivery and recordation of the assignments of the mortgages, as well as the acts and conduct of the late Katherine Schaefer, subsequent to the recordation."

That plaintiff is making such claim is admitted by the answer interposed herein, but it is therein specifically denied that said claim is a meritorious one.

In the seventeenth paragraph of that answer the estate of Katherine Schaefer sets up the claim that "no right, title or interest in and to the mortgages referred to in the complaint herein is vested in the plaintiff, other than her distributive share, as such in administration proceedings, by virtue of the said plaintiff being one of the children of Katherine Schaefer, deceased."

It is upon the pleadings of the respective parties and the evidence received on the trial of this action that I am asked to render judgment in the case at bar.

The facts are as follows:

The decedent Katherine Schaefer was the mother of Elsie M. Speaker the plaintiff and the defendants Lillian Keating and Charles Schaefer; and the wife of Theodore Schaefer.

The said Lillian Keating, Charles Schaefer and Theodore Schaefer as administrators of the goods and chattels of Katherine Schaefer, deceased, are defendants in this action.

Adam Christmann was made a defendant simply because he had possession of the bonds and mortgages and assignments in question at the time of the commencement of the action. He had been an active member of the bar for 39 years, except during the time he was a Judge, and had a large practice in real estate law, and in the Surrogates' Courts.

He was a Judge of the Municipal Court of the City of New York, Borough of Queens, Third District, from January 1, 1920, to February 1, 1927.

He is a disinterested witness.

Katherine Schaefer for reasons of her own selected Elsie M. Speaker as the object of her bounty. These reasons will become apparent from the facts as they will later appear.

On December 21, 1936, prior to the execution of the assignments of mortgages hereinafter described, Katherine Schaefer, in pursuance of a plan, had her lawyer, Adam Christmann, a defendant in this action, prepare an instrument in the form of a letter, which was signed by the plaintiff Elsie M. Speaker, in the following words:

"December 21, 1936.

"Mrs. Katherine Schaefer

(addressed)

"Dear Madam:

"I hereby authorize you to collect any and all interest on mortgages which may be held by myself and yourself, as joint tenants and sign for same.

"I further agree that I shall not ,make any claim against your estate for any interest that may have been collected by you.

"Very truly yours,

"Elsie M. Speaker"

(Plffs Ex. 7)

On January 26, 1937, Katherine Schaefer in furtherance of said plan (initiated December 21, 1936, although considered by her prior to that time) caused to be executed, acknowledged and recorded, seven assignments of mortgages to Katherine Schaefer and Elsie M. Speaker, jointly, survivor to take all.

Frances Kanz testified that she knew said Katherine Schaefer for thirty years and the plaintiff Elsie M. Speaker for a like period, and was separated from them but renewed her friendly relations with said Katherine Schaefer in the month of October, 1936, and after that time until Katherine Schaefer's death saw her on an average of once a week, and sometimes went out with Mrs. Schaefer alone, and sometimes with Mrs. Schaefer and her son Charles, and also went with Katherine Schaefer and Charles Schaefer to visit the plaintiff in New Jersey, whom she visited alone and with whom she .maintained close friendly relations.

She is a disinterested witness, and further testified that on a visit to said Katherine Schaefer in the latter part of January, 1937, the said Katherine Schaefer told her that Charlie had taken her to the lawyer's office that afternoon and that she had made over her mortgages in Elsie's (the plaintiff's) name and her reasons for so doing.

The defendant Adam Christmann, a disinterested witness, testified why Katherine Schaefer created the assignments of the mortgages in question.

The husband of the plaintiff, William Speaker, Jr., testified that the act of Katherine Schaefer in making the assignments was made known to Elsie M. Speaker a month after it was done, and I see no reason to doubt his testimony, as the plaintiff knew of the plan, see her letter (Ex. 7), and surely she knew of it during the lifetime of said Katherine as is shown by her actions hereinafter recited.

The defendant, Adam Christmann, further testified that the assignments were made pursuant to the instructions of said Katherine Schaefer, and that interest on said mortgages, during the lifetime of said Katherine Schaefer was to be made payable to said Katherine Schaefer, but that he did not collect and pay over the interest to said Katherine Schaefer, as that was attended to by her son Charles who collected the interest.

Between the date of the making of the assignments of the mortgages and the death of said Katherine Schaefer, which occurred on August 2, 1939, one of the mortgages, referred to in the testimony herein as the Roessler Mortgage, was paid off, and the plaintiff Elsie M. Speaker joined with the said Katherine Schaefer in the execution of a certificate for the discharge of said mortgage. (Exhibit C).

The monies obtained from the discharge of this mortgage were paid to said Katherine Schaefer only. William Speaker, Jr., the husband of the plaintiff Elsie M. Speaker, testified that said payment was made to said Katherine Schaefer under an arrangement made with said Katherine Schaefer by Elsie M. Speaker, that if any mortgages were paid off, the funds would be re-invested for their joint purposes. Of course he is an interested witness, but in view of all the circumstances, and especially in view of Exhibit 7 which referred to interest only and not to principal, and the fact that the said Katherine Schaefer was experienced in making mortgage loans, and the plaintiff was not, and further that the said Katherine Schaefer desired to live on the income, I am convinced that the witness was telling the truth.

Between the date of the making of the assignments of the mortgages on January

26, 1937, and the date of the death of said Katherine Schaefer on August 2, 1939, one of the mortgages became due, and said Katherine Schaefer and the plaintiff Elsie M. Speaker as parties of the first part joined in an extension agreement of said mortgage with one Clara Dietrich (Ex. 8). This agreement was not recorded.

The defendant Charles Schaefer testified that it was agreed by the plaintiff Elsie M. Speaker that on the death of their mother she would share the assigned mortgages with him, and that Exhibit 7 was given to protect his rights. This claim was made by him in his individual capacity, although he was one of the administrators of the goods and chattels which were of Katherine Schaefer, deceased.

Neither the defendant Adam Christmann, the witness Frances Kanz, or William Speaker, Jr., husband of the plaintiff, testified to any such alleged arrangement as testified to by the defendant Charles Schaefer, and certainly Exhibit 7 does not corroborate him or support his contention. I am convinced that there was no agreement on the part of the plaintiff, Elsie M. Speaker, with either said Katherine Schaefer or the said Charles Schaefer or with both of them to give to the said Charles Schaefer after the death of said Katherine Schaefer any of the said mortgages so assigned to her jointly with Katherine Schaefer.

Nowhere in the testimony of said Charles Schaefer do we find any statement that the plaintiff said she would give him half. He says that his mother, now dead, speaking with him and plaintiff said half and plaintiff acquiesced. The most he testified to saying to the plaintiff was: "I had to depend on her doing the right thing by me after my mother's death." I believe he is in error as to such a statement being made by his mother, or acquiescence by the plaintiff, as I am convinced that his mother and plaintiff did not intend that he should have any of the assigned bonds and mortgages or their proceeds.

No affirmative relief is sought by the said Charles Schaefer in this action in his individual capacity based on any such agreement, but defendants contend that his testimony with reference to said alleged agreement was offered to show that by said assignments the plaintiff did not receive a gift inter vivos.

Of course under the pleadings the plaintiff was not called upon to meet any personal claim of the said Charles Schaefer, and was not called upon to treat it in any way other than any other evidence offered by the defendants.

Between the date of the making of the assignments of the mortgages on January 26, 1937, and the date of the death of said Katherine Schaefer on August 2, 1939, a deed was taken, in lieu of foreclosure, in the names of said Katherine Schaefer and the plaintiff Elsie M. Speaker, as tenants in common.

This the defendant Adam Christmann testified was his error as he should have drawn the deed to Katherine Schaefer and Elsie M. Speaker jointly survivor to take all.

Charles Schaefer disagreed with the defendant Adam Christmann as to the error, and testified that the error consisted in not drawing the deed to Katherine Schaefer alone, and that he Charles Schaefer lost $700 by reason of that fact.

I disagree with Charles Schaefer, and agree with the defendant Adam Christmann, but in any event, I do not understand how Charles Schaefer lost the $700, nor what it has to do with this case, if he did.

The so-called interest paper (Ex. 7) was produced by the said Charles Schaefer on the trial pursuant to a notice to produce served upon the defendants' attorneys.

The attempt of the defendants to show a proposed settlement which was never accepted, was ruled out.

Any one may, if possible, buy his or her peace in the case of claims like those made by defendants in this case, but I allowed inquiry as to any admissions against interest made by the plaintiff, and I do not find that she made any.

Evidence was offered by the defendants to show the high regard that the said Katherine Schaefer had for her son the said Charles Schaefer, and that seems to be a fact, but it is also a fact, as shown by the evidence, that said Katherine Schaefer believed, and said that she had loaned the said Charles Schaefer $15,000 which he had not paid back. That she had loaned the said Charles Schaefer $15,000, but not all at one time, was admitted by the said Charles Schaefer, but he says that he had paid back all.

The said Charles Schaefer did attend to much of his mother Katherine Schaefer's

business, and had access to her safe deposit box, and shortly before her death removed all of the assignments, mortgages, bonds and other papers the subject matter of this controversy, and delivered them to the defendant Adam Christmann.

This is a family dispute.

The deceased Katherine Schaefer was an elderly woman, 69 to 70 years of age.

Theodore Schaefer was her husband from whom she had been separated for 30 or 32 years.

Charles Schaefer was her son, a single man, to whom she said she had loaned $15,-000 to go into the building business, which he had not returned. He admits that he borrowed about that sum, but not all at one time, but says he had paid it back. The witness Kanz testified that Katherine Schaefer said she considered that was his share.

Lillian Keating was her daughter, with whose husband, Charles J. Keating, said Charles Schaefer had gone into the building business, and who had recovered a judgment against Charles Schaefer for about $5,000. Katherine Schaefer was unfriendly to her daughter Lillian Keating.

Elsie M. Speaker was her daughter, the mother of three children, and these three grandchildren were greatly beloved by their grandmother Katherine Schaefer. Elsie M. Speaker was a sufferer from tuberculosis and had been at Saranac for treatment prior to the making of the assignments in question.

This case must be decided under the laws of the State of New York.

The main question presented in this case is: Did the assignments in question constitute a gift inter vivos between the said Katherine Schaefer and Elsie M. Speaker, the plaintiff?

The defendants contend that the making of the assignments in question was an attempted testamentary disposition in violation of the Decedent Estate Law of the State of New York, Consol.Laws, c. 13.

A "testamentary disposition" is defined in 24 American Jurisprudence, paragraph 13, page 736, as follows: "Testamentary Dispositions. It is not always easy to determine whether or not an instrument is testamentary in character. It depends upon the intention of the donor. Where there is not only a donative intention, but also a complete divestment by the donor of all dominion or control over the thing

given, the transaction is a gift inter vivos and not testamentary in nature. The fact that the instrument postpones the enjoyment of the subject matter until after the death of the grantor is not decisive that the instrument is testamentary in character. The test is whether the maker intended the instrument to have no effect until after his death or whether he intended it to transfer some present interest. If some interest vests at once in right, although the enjoyment of it is postponed, the instrument is not a will."

On behalf of the defendants are cited Townsend et al. v. Rackham et al., 143 N.Y. 516, 38 N.E. 731, and McCarthy v. Pieret, 281 N.Y. 407, 24 N.E.2d 102.

In Townsend et al. v. Rackham et al., supra, the facts so clearly establish that the transaction was testamentary in character that it is of no aid in the determination of the case at bar. In that case the mortgagee retained possession and control of each mortgage until it was satisfied. Neither of the persons to whom payments were to be made, several years after the death of the mortgagee, had any knowledge, or took any delivery of, or in any manner accepted or assented to any of the mortgages and this clearly distinguishes that case from the case at bar.

In McCarthy v. Pieret, supra, it clearly appears that the intent was to attempt to make a testamentary disposition as the court found that it was never the intention of the mortgagee to transfer a vested interest to her brother and the heirs of her sister and this clearly distinguishes that case from the case at bar. The court in that case did, however, at page 409 of 281 N.Y., 24 N.E.2d at page 103, set forth the test by which to determine whether a transaction is a gift or a testamentary disposition in the following words: "A concise statement of the rule, easy of expression but difficult in application, is to be found in 28 C.J. (p. 624, Sec. 11–e): 'Where a gift is made effective in the lifetime of the decedent and he has divested himself of all power to recall it, such transaction is a gift inter vivos, and not testamentary in its nature. If the gift does not take effect as an executed and completed transfer to the donee, either legally or equitably, during the life of the donor, it is a testamentary disposition, good only when made by a valid will. * * * The test is whether the maker intended the instrument to have no effect

until after the maker's death, or whether he intended it to transfer some present interest.' "

■ The law recognizes a joint tenancy in personal property. In re Reynolds' Estate, Surr.Ct., 163 N.Y.S. 803, 807; In re Raggi's Estate, 171 Misc. 836, 13 N.Y.S. 2d 691.

■ In the case at bar said Katherine Schaefer consulted her lawyer, the defendant Adam Christmann, with reference to making a will and learned from him that she could not, by will, cut off her husband who, according to her, had not supported her for thirty years, but the way to accomplish that was to make an assignment of the mortgages to herself, and whoever she desired to have them, jointly the survivor to take all. She considered this for some time, as she desired to have her support from the interest of such mortgages for her life. She requested the defendant Adam Christmann to prepare the paper. He prepared and sent to be signed by the plaintiff Elsie M. Speaker the paper Exhibit 7, which she signed and that was followed by the execution and acknowledgment by said Katherine Schaefer of the assignments of said mortgages to Katherine Schaefer and Elsie M. Speaker jointly survivor to take all, on January 26, 1937, and the recordation of the said assignments by the defendant Christmann. On December 31, 1936, and again on January 26, 1937, said Katherine Schaefer informed the defendant Christmann why she was making the plaintiff Elsie M. Speaker the object of her bounty, and on January 26, 1937, gave similar information to Frances Kanz. The plaintiff acquired in February, 1937, knowledge that her mother had made the assignments. Thereafter the plaintiff jointly discharged one of the mortgages and thereafter the plaintiff and her mother jointly extended the Dietrich mortgage. Said Katherine Schaefer by the said assignments intended to and did divest herself of all power to recall the gift in her lifetime, and did transfer to the plaintiff a present interest but with the right of enjoyment in the plaintiff of the interest on the mortgages postponed until the death of said Katherine Schaefer. The plaintiff Elsie M. Speaker did not either before or after the making of said assignments during the life of her mother agree to turn over or pay any part of the proceeds of the said mortgages after the death of her said mother to her brother Charles Schaefer. The letter (Exhibit 7) covered only the interest and not the principal of said mortgages.

The assignments of mortgages in question were not testamentary dispositions.

Defendants contend that in any event the said assignments were not gifts inter vivos.

■ There are three elements which are basic essentials of a gift inter vivos, viz.: Intention, delivery and acceptance, and I will consider them in that order.

■ Intention calls for a mental operation by the donor, which is evidenced by words and conduct, and also by the presumption that the donor intends the legal effect of his or her acts.

This is clearly pointed out in a New York case, Beaver v. Beaver et al., 117 N. Y. 421, 22 N.E. 940, 6 L.R.A. 403, 15 Am. St.Rep. 531.

In that case the Court said, at page 429 of 117 N.Y., 22 N.E. at page 942, 6 L.R.A. 403, 15 Am.St.Rep. 531, that the gift alleged to have been made by a father to his son was legally ineffective, on the ground that, "there is no proof of any oral statement made by the father on that occasion disclosing an intention to make a gift, and not a scintilla of evidence that afterwards, during the 20 years which elapsed before the son's death, the father made any declaration or in any way recognized that the money belonged to the son, or had been given to him." And, 117 N.Y. at page 431, 22 N.E. at page 942, 6 L.R.A. 403, 15 Am.St.Rep. 531, "It may be true that, as between parent and child, a presumption of a gift may be raised from circumstances where it would not be implied between strangers. Ridgway v. English ['s Ex'rs] 22 N.J.L. 409."

This subject is treated in 20 Ruling Case Law, Parent and Child, § 5, where it is said: "The relation between parent and child, whether adult or minor, naturally leads to gratuitous conveyances of land and gifts of personal property between them, especially from the parent to the child. Such conveyances require no other consideration than parental affection and duty. Less positive and unequivocal testimony is required to establish the delivery of a deed or gift from a father to his children than between persons who are not related; and in cases where there is no claim of fraud or undue influence, very slight evidence will suffice. There-

fore if a father executes a deed to a child and puts it on record, delivery and acceptance are presumed, the father being held to act in a sense as the representative of both parties to the transaction. Cecil v. Beaver, 28 Iowa 241, 4 Am.Rep. 174; Love v. Francis, 63 Mich. 181, 29 N.W. 843, 6 Am.St.Rep. 290; Holmes v. McDonald, 119 Mich. 563, 78 N.W. 647, 75 Am.St.Rep. 430; Tobin v. Bass, 85 Mo. 654, 55 Am.Rep. 392; Kern v. Howell, 180 Pa. 315, 36 A. 872, 57 Am.St.Rep. 641 and note. Note: 16 Am.Dec. 44."

In the case at bar there is no allegation or proof of undue influence or fraud.

■ The intention of the donor is clearly shown by the testimony of the defendant Christmann, Frances Kanz, and the obtaining from the plaintiff of the letter (Exhibit 7) before the assignments were made.

■ Delivery of the gift may take one of three forms, actual, constructive or symbolic.

The delivery must be as perfect as the nature of the property, and circumstances and surroundings of the parties will reasonably permit, and hence it may take one of the three forms recited. Crouse v. Judson, 41 Misc. 338, 84 N.Y.S. 755.

For a very late New York case on the subject of constructive delivery, see In re Sweeney's Estate, 259 App.Div. 935, 19 N.Y.S.2d 530.

For a very late New York case dealing with declarations of a donor as furnishing some evidence upon which to base a finding of a valid gift inter vivos, see Mutual Life Ins. Co. v. Holley, 280 N.Y. 330, at page 337, 20 N.E.2d 776, at page 779, 124 A.L.R. 1386, in which the court said: "Whatever may be said of the wisdom of allowing an admission by the donor that he had given the policies to the donee as evidence that an actual transfer had taken place it appears to be settled in the State of New York that such evidence is at least some evidence upon which to base a finding that a valid gift inter vivos had been made. * * *"

As I have hereinbefore said the law recognizes a joint tenancy in personal property. In re Reynolds' Estate, supra; In re Raggi's Estate, supra.

■ In the case at bar we are dealing with a joint, not a whole gift, and after the assignments were made and recorded each of them jointly owned all of the mortgages and was entitled to possession of them subject to the same right in the other joint owner and the physical possession by one of the joint owners was the physical possession of both. McElroy v. Albany Savings Bank, 8 App.Div. 46, 40 N.Y.S. 422; Fowler v. Butterly, 78 N. Y. 68, 34 Am.Rep. 507.

■ I have found intention of the said Katherine Schaefer and therefore the making and recording of the assignments by the attorney for Katherine Schaefer shows delivery. The recording of the assignments under the circumstances of the case at bar is prima facie evidence of delivery. Ford v. McCarthy, 77 Hun 612, 29 N.Y.S. 786; Van Valen v. Schemerhorn, 22 How.Prac. 416.

While the case at bar must be decided under the law of New York State, it will not be amiss to cite decisions of the Courts of sister States which at least are entitled to respectful consideration.

The question of joint mortgages has been dealt with in the State of Massachusetts in Sullivan v. Hudgins, 303 Mass. 442, 22 N.E.2d 43, 46, in which the court said: "It is however, settled that manual delivery of a recorded deed is not required to work a transfer, and that acts of the grantee when coupled with a purpose of the grantor to treat the deed as delivered are sufficient to pass the title."

The making of a gift of a part of a mortgage was passed on in the State of Michigan in Green v. Langdon, 28 Mich. 221.

The creation of a joint mortgage has been passed on in the State of Iowa in Abegg v. Hirst, 144 Iowa 196, 122 N.W. 838, 138 Am.St.Rep. 285.

The question of delivery as it affects shares of building and loan stock has been passed on in the State of New Jersey in East Rutherford Building & Loan Ass'n v. McKenzie, 87 N.J.Eq. 375, 100 A. 931, 933, in which the court said: "Even supposing that there had been no actual physical delivery of the evidences of the property to Mrs. McKenzie, Mr. McKenzie as joint tenant with the right of survivorship had such an interest in his right of survivorship as permitted him to hold and manage the joint property to the best advantage of all concerned."

These decisions of sister States seem to me to add weight to my interpretation of the law as to delivery.

I have considered the defendants' criticism of the cases cited by plaintiff, which I have cited in my opinion, supra, and neither time nor space would warrant the discussion of each of them; suffice to say that in my opinion each of them is authority for what they are cited in this opinion.

Again I repeat that we must not lose sight of the fact that by the assignments in question a joint ownership was created where each owner was entitled to possession and the possession of either was the possession of both.

■■■ Katherine Schaefer intended to make the gift of joint ownership to plaintiff, and executed and directed the recording of the assignments by her lawyer, and they were recorded by him. Katherine Schaefer informed others of her making the gift; the plaintiff learned of it, and thereafter exercised the right of a joint owner in joining in the discharge of one mortgage and the extension of another, and the said Katherine Schaefer could not thereafter have succeeded in setting the assignments aside in an action in equity. This, it seems to me, under the circumstances in this case constituted delivery.

If, however, there be any further question about delivery it seems to me to be settled by the following acts and circumstances: Plaintiff signed Exhibit 7 to cover mortgages which she must have known were to be assigned to her. That paper was drawn by the witness Christmann. Later the papers necessary to furnish the data for the drawing of the assignments were delivered to the witness Christmann with instructions to draw and record the assignments of mortgages, which were for the benefit of both joint tenants. The witness Christmann drew and recorded the assignments of mortgages, retaining the papers which had been delivered to him, which, and the assignments when returned from record, he turned over to Charles Schaefer for his mother Katherine Schaefer one of the joint tenants, who had been authorized by the other joint tenant Elsie M. Speaker, the plaintiff, to receive and collect the interest. That was a sufficient delivery as the witness Christmann held the papers after recording the assignments of mortgages for the benefit of both joint tenants.

■■■ Acceptance which may be actual or implied and may also be evidenced by words and conduct, need not be contemporaneous with delivery, but may be manifested subsequently. Doty v. Willson, 47 N.Y. 580, at page 583, in which case the court said: "If the circumstances clearly evince the intention, it is sufficient; and if these are equivocal, an explicit declaration afterward of that intention is competent." Van Cleef v. Maxfield, 196 App.Div. 734, 188 N.Y.S. 322, in which case the court said that the acceptance of a gift as such need not be contemporaneous with delivery and may be manifested subsequently and quoted from Doty v. Willson, supra, the portion hereinbefore quoted.

■■■ Acceptance by the plaintiff of the gift is shown by her signing (Exhibit 7), her execution of the extension of the Dietrich mortgage, her execution of the discharge of the Roessler mortgage and knowledge by her without rejection of the gift.

■■■ Of course the burden rested upon the plaintiff to establish a gift inter vivos, but she was only required to establish it by a fair preponderance of the evidence. McKeon v. Van Slyck, 223 N.Y. 392, 192 N.E. 851; In re Jennings' Estate, 259 App. Div. 822, 19 N.Y.S.2d 71.

As defendants in their brief and reply brief have treated the question of gifts inter vivos in its entirety, and have not for consideration divided it into elements, and treated them separately, I will consider the cases cited by them.

In re Bates' Estate, ——Misc.——, 21 N.Y. S.2d 306. I entirely disagree with defendants' contention that the plaintiff in the case at bar made admissions that she was carrying out oral instructions of the deceased and I find that she was not, and that clearly distinguishes the case at bar from the case cited.

Viggiani v. Favata, 257 App.Div. 346, 13 N.Y.S.2d 353. That there is a presumption of delivery under the conditions hereinbefore found by me is shown by the opinion in that cited case as at page 348 of 257 App. Div., 13 N.Y.S.2d at page 354, the court said: "Proof of the stipulated facts would have entitled the deceased to bring an equity suit to have canceled as of record the assignment to the plaintiff, as such facts would have rebutted the presumption of validity of the recorded instrument."

Not only does that recited case refer to an assignment to an individual, and not to an assignment to joint owners as in the case at bar, which with the other papers the donor directed his attorney to deliver

after the donor's death, but it is clearly distinguishable in that no suit in equity could have been successfully maintained to have the assignments in the case at bar cancelled of record.

Young v. Young et al., 80 N.Y. 422, 36 Am.Rep. 634. The defendants have emphasized that case, but it seems to me they fail to distinguish between a right based on possession and a right based on a recorded assignment to joint owners survivor to take all. The law as to gifts inter vivos and declarations of trust is fully discussed.

In that cited case with reference to the written memoranda attached by the donor to the envelopes containing the bonds the court said: "He declares that the bonds are owned by William H. Young, but the interest to become due on the same is owned and reserved by the donor for so long as he shall live, and that at his death the bonds are owned by the donee 'absolutely and entirely' in one case, and 'wholly and entirely' in the other."

Again at pages 431, 432 of 80 N.Y., 36 Am.Rep. 634, the court further said: "There are some verbal differences in the two memoranda, but the purport of both is the same. They both express in the same words that the interest to become due on the bonds is 'owned and reserved' by the donor for so long as he shall live, and that the bonds are not to belong 'wholly' or 'absolutely' to the donees till after his death."

That case is clearly distinguished from the case at bar, in which there is an absolute gift by the assignments of mortgages to Katherine Schaefer and Elsie M. Speaker, the plaintiff, of both principal and interest of the mortgages without any reservation of interest. That both were, by the assignments of mortgages, entitled to collect, and receive both principal and interest is apparent from the agreement signed by the plaintiff (Exhibit 7), in which the plaintiff did not assign the interest to Katherine Schaefer, but, recognizing the right of both to the interest, provided as follows: "I hereby authorize you to collect any and all interest on mortgages which may be held by myself and yourself, as joint tenants and sign for the same. I further agree that I shall not make any claim against your estate for any interest that may have been collected by you."

Exhibit 7 did not give the interest, which they were both entitled to receive, to Katherine Schaefer, but merely estopped the plaintiff from making any claim against

Katherine Schaefer's estate for any interest collected by Katherine Schaefer.

This it appears to me fairly brings the case at bar under that portion of the opinion in that cited case, 80 N.Y. on page 431, 36 Am.Rep. 634, which said: "But if an absolute delivery of the bonds to the donee, with intent to pass the title, was made out, the donor reserving only the right to look to the donee for the interest, the transaction may be sustained as an executed gift. (Doty v. Willson, 47 N.Y. 580.)"

Counsel for defendants are in error if they believe that I suggested that the donor created a trust, what I said was that the witness Charles Schaefer, by his testimony, appeared to be trying to impress a trust on the mortgages assigned to the plaintiff for his own benefit, and to accomplish that he would of course have to admit the legality of the assignments or there would be nothing in plaintiff's hands on which he could impress a trust. That position of his, as evidenced by his testimony, although not pleaded, would be in direct conflict with the defendants' contention in the action at bar.

There is no claim by the plaintiff that the donor by the assignments of mortgages in question created any trust so no discussion of Wadd v. Hazleton et al., 137 N.Y. 215, 33 N.E. 143, 21 L.R.A. 693, 33 Am.St.Rep. 707, is necessary.

Matter of Bolin, 136 N.Y. 177, 32 N.E. 626. That case had to do with a deposit in a Savings Bank and on the facts is distinguished from the case at bar, which is clearly shown in the opinion at page 180 of 136 N.Y., 32 N.E. at page 626, where the court said: "The brief oral and documentary evidence tended to prove nothing in the way of a gift of the moneys inter vivos, or of a transfer of the account in the bank, * * *."

Gannon v. McGuire, 160 N.Y. 476, 55 N.E. 7, 73 Am.St.Rep. 694, requires no extended consideration, as in that case it was held that the return of the property to the donor for safe keeping after a completed gift inter vivos did not defeat the gift, and what was said about intention, delivery and acceptance of a gift inter vivos has already been considered by me in this opinion. That again is a case where the gift was to an individual and not to joint owners with right of survivorship.

Matter of Heiser's Estate, 85 Misc. 271, 147 N.Y.S. 557. That case arose under the transfer tax act; it adds nothing to what

has been said about intention and delivery, and requires no further consideration.

What defendants offer by way of definition of delivery has already been discussed by me at length, and requires no repetition, but all that defendants offer or say relates to a gift to an individual and not to joint owners.

Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643, relates to the creation of a trust, not to a gift inter vivos, and is not in point. There was nothing illusory about the gift in the case at bar, that is evidenced by the actions of the parties and the execution by plaintiff with said Katherine Schaefer of the extension of one mortgage, and the cancellation of another of the mortgages, which had been assigned to them as joint tenants, survivor to take all, and the execution and delivery of Exhibit 7.

Allen-West Commission Co. v. Grumbles et ux., 8 Cir., 129 F. 287, adds nothing to what has been said about the necessity of intention and delivery, but in that case again the attempted gift was to an individual, and not to joint owners with the right of survivorship, and delivery under the two classes of gifts, as I have pointed out, of necessity must be different.

Basket v. Hassell, 107 U.S. 602, 2 S.Ct. 415, 27 L.Ed. 500. That case adds nothing to what has been said about the necessity of delivery and also relates to a gift to an individual, and not to joint owners survivor to take all, where the requirements must be different, and it is to be noted that the assignments of mortgages in question vested the plaintiff with a present title, and did not confer on her the power to control the mortgages or their proceeds only after the death of Katherine Schaefer.

Defendants in their main brief cited the following cases which I have not discussed; all of the other cases cited have been discussed, by me, in this opinion, supra:

Matter of Van Alstyne, 207 N.Y. 298, 100 N.E. 802, 806. That case adds nothing to what has already been said particularly as to Young v. Young et al., supra. It is clearly distinguished from the case at bar, as in that cited case the court said: "The alleged gift to the respondent is not supported by any evidence upon which it can be sustained." That, as I have pointed out supra, is not the situation in the case at bar.

Kelley v. Kelley, ——Misc.——, 14 N.Y.S. 2d 545. That case adds nothing to what has been said about the elements of a gift inter vivos, especially in Young v. Young et al., supra, and I can see no other reason for citing it as there is no question of undue influence in the case at bar.

Matter of Crawford et al., 113 N.Y. 560, 21 N.E. 692, 5 L.R.A. 71. That case adds nothing to what has already been considered. It is distinguished from the case at bar in that the donee knew nothing about the intended gift, and that while the donor may have intended to make the gift, he made no attempt at delivery, while in the case at bar the facts are quite to the contrary.

Matter of Loewi's Estate, 75 Misc. 57, 134 N.Y.S. 679. That relates to a transfer tax proceeding and adds nothing to what has already been said about gifts to individuals. The court in its opinion at page 61 of 75 Misc., 134 N.Y.S. at page 681, said: "There was therefore no valid delivery of the bonds to the alleged donees, and the evidence is insufficient to show that the donor intended that the bonds in question should pass from his possession and control to that of the donees on the 1st day of June, 1909."

A judgment is granted to the plaintiff as demanded in the complaint against the defendants with costs against all of the defendants except Adam Christmann, but without costs against the defendant Adam Christmann.

Settle judgment on notice, and submit proposed findings of fact and conclusions of law in accordance with this opinion.